156 N.J. Super. 494 (1978)
384 A.2d 167
NEW JERSEY STATE PAROLE BOARD, PLAINTIFF-RESPONDENT,
v.
ELTEE BOULDEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 3, 1978.
Decided February 27, 1978.
*495 Before Judges ALLCORN, MORGAN and HORN.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Ms. Rosemary K. Reavey, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. William F. Hyland, Attorney General, attorney for respondent (Ms. Erminie L. Conley, Deputy Attorney General, of counsel; Mr. Eugene M. Schwartz, Deputy Attorney General, on the brief).
The opinion of the court was delivered by ALLCORN, P.J.A.D.
Defendant was convicted of murder and, on April 8, 1971, was sentenced to State Prison for a term of 10 to 12 years.
On December 9, 1975 defendant was paroled. Thereafter, he was charged with and found guilty of a violation of parole. His parole was revoked on September 7, 1976, after *496 hearing, and he was reincarcerated. A notice of appeal from said parole revocation was filed October 25, 1976, the appeal being founded upon the asserted failure of the revocation hearing "to comport with minimal due process standards." During the pendency of the appeal in this court, the defendant was reparoled (June 1977); that parole terminated on September 21, 1977, with the expiration of his adjusted maximum sentence.
With the completion of his adjusted maximum sentence and the termination of parole supervision, defendant has satisfied any criminal obligation owing by him to the State of New Jersey on account of such offense. He has been fully discharged. In these circumstances, it is manifest that defendant has no cognizable interest in reviewing the action of the Parole Board in revoking his parole. The issue raised by this appeal thus has been mooted.
It is suggested, however, that defendant does have an interest sufficient to maintain the appeal because he may be "subsequently caught up once more in" criminal proceedings, and thus should be "entitled to proceed through that process, including sentencing and future parole release applications, unprejudiced by an improperly founded prior parole revocation." Board of Trustees of Youth Correctional Center v. Davis, 147 N.J. Super. 540, 543-544 (App. Div. 1977). In short, the hypothesis is that parole revocation constitutes a stigma or blemish on the defendant's record which, if unwarranted, he is entitled to have removed.
The concern so manifested in Davis rests completely upon chance: First, that defendant may again find himself in difficulty with the criminal law; and, second, that if he does, the record of his earlier parole revocation may come to the attention of the sentencing judge or Parole Board and somehow, some way, adversely affect him. Neither does it take into account the countervailing public interest.
There is little doubt that, in New Jersey, when a person has been convicted of a criminal or quasi-criminal offense, such conviction and the record thereof represents a stigma *497 in the real sense of the term. In consequence, our courts have held that the intervening service of the sentence or the payment of the fine imposed on the conviction  or even the death of defendant himself  pending appeal, does not moot appellate review and determination of the propriety of that conviction. This, because of the collateral legal disadvantages, civil disabilities or the public stigma which attend upon or attach to a person as a result of such conviction and the record thereof. It seriously affects his reputation and economic opportunities. Newark v. Pulverman, 12 N.J. 105, 115-116 (1953); Bower v. State, 135 N.J.L. 564, 568 (Sup. Ct. 1947); U.S. v. Washington, 341 F.2d 277 (3 Cir.1965). See, generally, Annotation, "When criminal case becomes moot so as to preclude review of or attack on conviction or sentence," 9 A.L.R.3d 462 (1966). In such circumstances, appellate review has a very real and meaningful purpose.[1]
The same may hardly be said for appellate review of a parole revocation, once the sentence has been completely executed and defendant unconditionally released. Such a review is little more than a meaningless exercise on a matter of complete insignificance. The courts and the public are already sufficiently burdened with the litigation of meaningful matters of substance without having to hear and to decide matters so insubstantial and frivolous. Too, the public has a right to be free of the burden of the exercise of litigating such trivia. For it is the public which is called upon to finance most, if not all, of the cost of such matters through the Public Defender, as in the instant case.
*498 Research of counsel and the court discloses few jurisdictions in the United States in which an appellate tribunal has subscribed to the view recently espoused by Davis, supra.[2] Whether dealing with revocation of parole or with denial of parole, almost all adhere to the contrary view, which was well expressed in Bennett v. State, 289 A.2d 28 (Me. Sup. Jud. Ct. 1972):
* * * His claim that he may suffer actual adverse collateral legal consequences from the revocation of his parole is more imaginary than real. A revocation of parole does not stand on the same level as a conviction of crime. Any judge about to sentence a recidivist will be more interested in the facts underlying the revocation of parole than in the parole record per se. The parole board, charged as it is by law to give deserving convicted persons as early as the law will permit the opportunity of rehabilitating themselves outside the penal institution, will also look behind the parole-revocation record in the exercise of its discretionary powers. * * * The judge prior to sentencing and the parole board prior to granting parole would give the prisoner opportunity to be heard and would most probably inquire into the underlying circumstances which resulted in the revocation of parole. The facts upon which the revocation of parole was based are the real matters which should be considered in the exercise of proper judicial or administrative discretion. The record in itself is not conclusive against the ex-parolee.

* * * * * * * *
We hold that any possible collateral consequence which may stem from a record of revocation of parole, such, as claimed, that it might influence a sentencing judge on a subsequent conviction of crime or the parole board in the administration of a future parole, is so minimal, conjectural and insubstantial, in comparison with the State interest to bring litigation to an end, that it does not justify making it an exception to the rule that courts will not decide moot questions or abstract propositions. [at 32]
See, also Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); Bowers v. U.S. Bd. *499 of Parole, 544 F.2d 898, 899 (5 Cir.1977); Berkley v. Benson, 531 F.2d 837, 838 (7 Cir.1976); United States Board of Parole v. Merhige, 487 F.2d 25, 28 (4 Cir.1973), cert. den. 417 U.S. 918, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); Weiss v. United States Parole Bd., 451 F.2d 1346 (5 Cir.1971); Blake v. Massachusetts Parole Bd., 341 N.E.2d 902 (Mass. Sup. Jud. Ct. 1976); State ex rel. Renner v. Dept. of H. & S. Serv., 71 Wis.2d 112, 237 N.W.2d 699, 701-702 (Sup. Ct. 1976); Belton v. Vitek, 113 N.H. 183, 304 A.2d 362, 364 (Sup. Ct. 1973); Glidden v. State, 301 A.2d 539, 541 (Me. Sup. Jud. Ct. 1973).
Logic and the sound principles of law represented by the generally accepted rule constrains us to accept it and to apply it. Accordingly, the appeal is dismissed.
NOTES
[1] Such thesis, however, was rejected by the United States Supreme Court in Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960), where the dissent urged review of a conviction after the sentence had been served, because the defendant might subsequently commit another crime which would carry a more stringent sentence because of the conviction at issue. The majority of the court failed even to respond to the argument.
[2] Davis, of course, may be distinguished on the ground that, although the defendant had been reparoled after his parole revocation, he had not completed the service of his term; at the time of the consideration of the appeal, defendant was still subject to parole supervision. The decision, however, spoke in much broader terms.